No. 24-10698

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

**UNITED STATES OF AMERICA**
Plaintiff-Appellee,

v.

**JEFFREY NDUNGI SILA**,
Defendant-Appellant.

_____

Appeal from the United States District Court for the
Northern District of Texas, Dallas Division
No. 3:22-CV-1340

_____

**DEFENDANT-APPELLANT'S BRIEF IN SUPPORT OF HIS
MOTION FOR A CERTIFICATE OF APPEALABILITY**
_____

Brent Evan Newton
Attorney at Law
Texas Bar No. 00788115
19 Treworthy Road
Gaithersburg, MD 20878
(202) 975-9105
brentevannewton@gmail.com

**Attorney for Defendant-Appellant
Jeffrey Ndungi Sila**

# CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Local Rule 28.2.1, the undersigned counsel for Defendant-Appellant, Jeffrey Ndungi Sila, certifies that the following persons as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal in this appeal.

1.   Jeffrey Ndungi Sila, Defendant-Appellant;

2.   United States of America, Plaintiff-Appellee;

3.   Brent Newton, Attorney for Defendant-Appellant on Appeal;

5.   Brent Newton and Christopher Knox, Attorneys for Defendant-Appellant in the district court proceedings;

6.   Assistant U.S. Attorney Stephen Gilstrap, Attorney for Plaintiff-Appellee in the district court and on appeal;

Dated: September 5, 2024                    Respectfully submitted,


                                           /s/ *Brent Evan Newton*
                                           Brent Evan Newton

## <u>REQUEST FOR ORAL ARGUMENT</u>

Petitioner-Appellant Sila respectfully requests oral argument. The ineffective-assistance-of-counsel issue is substantial (indeed, meritorious), and oral argument would aid this Court's decisional process.

# **TABLE OF CONTENTS**

<u>Page</u>

STATEMENT OF JURISDICTION ...........................................……...1

ISSUE PRESENTED ......................................................................2

STATEMENT OF THE CASE ....................................................3

SUMMARY OF THE ARGUMENT...........................................15

ARGUMENT ........................................................................17

    Legal Standard Governing a Certificate of Appealability..…………17

    Sila's Trial Counsel Provided Ineffective Assistance of Counsel by Failing to Challenge Sila's Prosecution for the Charges in Counts One and Two in the Northern District of Texas…………………………………………………………...19

    The District Court Mistakenly Believed that this Court's Decision on Sila's First Direct Appeal Forecloses His Ineffective-Assistance Claim…………………………………………………….....28

CONCLUSION .........................................................................34

CERTIFICATE OF SERVICE....................................................35

CERTIFICATE OF COMPLIANCE ...........................................36

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Browning v. Navarro*,
   887 F.2d 553 (5th Cir.1989) .................................................................31

*Buck v. Davis*,
   580 U.S. 100 (2017) ...........................................................................17

*Burnham v. Evangelidis*,
   411 F.Supp.3d 126 (D. Mass. 2019) ...................................................17

*Buxton v. Collins*,
   925 F.2d 816 (5th Cir.1991) ...............................................................18

*Carafas v. LaVallee*,
   391 U.S. 234 (1968) ..............................................................................1

*Cooper Indus. v. Aviall Servs., Inc.*,
   543 U.S. 157 (2004) ...........................................................................29

*Cornell v. Kirkpatrick*,
   665 F.3d 369 (2d Cir. 2011) ...............................................................27

*Crane v. Johnson*,
   178 F.3d 309 (5th Cir. 1999) ..............................................................14

*Cullen v. Pinholster*,
   563 U.S. 170 (2011) ...........................................................................14

*Drinkard v. Johnson*,
   97 F.3d 751 (5th Cir. 1996) ................................................................17

*Fontaine v. United States*,
   411 U.S. 213 (1973) ...........................................................................32

*Frost v. Gilbert*,
   835 F.3d 883 (9th Cir. 2016) ..............................................................17

*Harrington v. Richter*,
   562 U.S. 86 (2011) .............................................................................14

*Henry v. Scully*,
   78 F.3d 51 (2d Cir. 1996) ...................................................................25

*In re Felt*,
   255 F.3d 220 (5th Cir. 2001) ........................................................13, 29

*Jones v. Warden*,
   402 F.2d 776 (5th Cir. 1968) ..............................................................18

*Lambright v. Stewart*,
   220 F.3d 1022 (9th Cir. 2000) ............................................................18

*Milanovich v. United States,*
  365 U.S. 551 (1961) ...................................................................12, 22

*Miller-El v. Cockrell,*
  537 U.S. 332 (2003) ...................................................................17, 18

*Morales v. United States,*
  25 F.Supp.2d 246 (S.D.N.Y. 1998) ...............................................17

*Pack v. Yusuff,*
  218 F.3d 448 (5th Cir. 2000) ...........................................................1

*Russo v. Johnson,*
  129 F.Supp.2d 1012 (S.D. Tex. 2001)............................................18

*Spencer v. Kemna,*
  523 U.S. 1 (1998) .............................................................................1

*Strickland v. Washington,*
  466 U.S. 668 (1984) ................................................................ *passim*

*United States v. Askia,*
  893 F.3d 1110 (8th Cir. 2018)........................................................21

*United States v. Ayesh,*
  702 F.3d 162 (4th Cir. 2012) ...........................................................8

*United States v. Beard,*
  713 F. Supp. 285 (S.D. Ind. 1989)..................................................20

*United States v. Camick,*
  796 F.3d 1206 (10th Cir. 2015)......................................................27

*United States v. Chang Hong,*
  671 F.3d 1147 (10th Cir. 2011)........................................................1

*United States v. Coffman,*
  969 F.3d 186 (5th Cir. 2020)......................................................6, 20

*United States v. Cotten,*
  471 F.2d 744 (9th Cir. 1973)............................................................8

*United States v. Dominguez Benitez,*
  542 U.S. 74 (2004) .........................................................................24

*United States v. Green,*
  897 F.3d 443 (2d Cir. 2018) ...........................................................20

*United States v. Guido,*
  554 Fed. App'x 631 (9th Cir. 2014) ...............................................27

*United States v. Haisten,*
  50 F.4th 368 (3d Cir. 2022) ...........................................................25

*United States v. Henrikson,*
  191 F.Supp.3d 999 (D. S.D. 2016) .................................................21

*United States v. Johnson,*
  19 F.4th 248 (3d Cir. 2021) ...........................................................26

*United States v. Kramer*,
  73 F.3d 1067 (11th Cir. 1996) ...........................................................22
*United States v. Lukashov*,
  694 F.3d 1107 (9th Cir. 2012) ..........................................................24
*United States v. McGoff*,
  831 F.2d 1071 (D.C. Cir. 1987) .........................................................21
*United States v. Powell*,
  99 F.Supp.3d 262 (D. R.I. 2015) .......................................................21
*United States v. Reagan*,
  596 F.3d 251 (5th Cir. 2010) ...................................................... *passim*
*United States v. Reese*,
  254 F.Supp.3d 1045 (D. Neb. 2017) ..................................................20
*United States v. Rodriguez-Moreno*,
  526 U.S. 275 (1999) ..........................................................................24
*United States v. Salinas*,
  373 F.3d 161 (1st Cir. 2004) .............................................................23
*United States v. Samson*,
  433 F. Supp.3d 1046 (S.D. Tex. 2020) ........................................20, 21
*United States v. Sila*,
  978 F.3d 264 (5th Cir. 2020) ...................................................... *passim*
*United States v. Sila*,
  2022 WL 327014 (Feb. 3, 2022) .......................................................10
*United States v. Smith*,
  373 F.3d 561 (4th Cir. 2004) .............................................................21
*United States v. Swaby*,
  855 F.3d 233 (4th Cir. 2017) ...............................................................1
*United States v. Tackett*,
  2011 WL 4005347 (E.D. Ky. Sept. 8, 2011) .....................................21
*United States v. Verdugo-Urquidez*,
  494 U.S. 259 (1990) ..........................................................................29
*United States v. Villamonte-Marquez*,
  462 U.S. 579 (1983) .............................................................................1
*United States v. Yashar*,
  166 F.3d 873 (7th Cir. 1999) .............................................................21

## Statutes

18 U.S.C. § 641 .............................................................. *passim*
18 U.S.C. § 666 .............................................................................21
18 U.S.C. § 1028A .....................................................................3, 27

18 U.S.C. § 1028A(a)(1) ........................................................27
18 U.S.C. § 3237(a) ...................................................23, 24, 30
18 U.S.C. § 3238 .....................................................12, 16, 20
28 U.S.C. § 1291 .................................................................1
28 U.S.C. § 2253(c) ..............................................................1
28 U.S.C. § 2255 .........................................................1, 10, 13, 14

**Rules**

Fed. R. App. P. 32 ..............................................................36
Fed. R. Crim. P. 18 ..............................................................8
Fed. R. App. P. 4(a) .............................................................1

# <u>STATEMENT OF JURISDICTION</u>

This Court has jurisdiction under 28 U.S.C. §§ 1291 & 2253(c).  On August 1, 2024, Sila filed a timely notice of appeal of the district court's final judgment (which denied both his motion for post-conviction relief under 28 U.S.C. § 2255 and a certificate of appealability, ROA.170) under Rule 4(a) of the Federal Rules of Appellate Procedure.  ROA.172.[1]  The district court possessed jurisdiction under 28 U.S.C. § 2255.[2]

---

[1] The electronic record on appeal is cited as "ROA."

[2] Sila was in "custody" (in federal prison) when he filed his § 2255 motion and, therefore, the district court had jurisdiction under § 2255.  *See Pack v. Yusuff*, 218 F.3d 448, 448 n.5 (5th Cir. 2000).  Because of delays in the district court's adjudication of his motion, Sila thereafter was released from federal prison and also completed his one-year term of supervised release before the district court ruled on his motion.  However, his case is not moot on appeal.  As a noncitizen, Sila will continue to suffer collateral immigration law consequences if his felony convictions remain in place.  ROA.157 (footnote 3).  *See United States v. Swaby*, 855 F.3d 233, 239 n.2 (4th Cir. 2017) ("When an inmate is released from custody, a habeas petition may become moot.  But here, the collateral immigration consequences Swaby continues to suffer from because of his federal felony conviction ensure his case is not moot.") (citing *Carafas v. LaVallee*, 391 U.S. 234, 237-38 (1968)); *United States v. Chang Hong*, 671 F.3d 1147, 1149 n.3 (10th Cir. 2011) (same); *see also Spencer v. Kemna*, 523 U.S. 1, 7-8 (1998) (collateral consequences presumed from a felony conviction); *cf. United States v. Villamonte-Marquez*, 462 U.S. 579, 581 n.2 (1983) (concluding that an appeal was not rendered moot by a noncitizen criminal defendant's deportation because, "as a collateral consequence of the convictions, the Government could bar any attempt by respondents to voluntarily re-enter this country").

## **STATEMENT OF THE ISSUE**

Whether appellant is entitled to a certificate of appealabilty on his claim that his trial counsel provided ineffective effective assistance by failing to challenge the prosecution of appellant under 18 U.S.C. § 641 for his conduct in Dallas in the Northern District of Texas.

## STATEMENT OF THE CASE

### A. Relevant Charges in the Second Superseding Indictment

Count One of the second superseding indictment alleged that, on or about August 9, 2016, "in the Dallas Division of the Northern District of Texas," Sila did "steal, purloin, and convert to his use, money and property of the United States of a value exceeding $1,000, to wit, a United States Treasury check payable to C.S. [Cynthia Short] in the amount of $76,592.86," in violation of 18 U.S.C. § 641 (paragraph one).  ROA.303.  Count Two alleged that Sila committed aggravated identity theft in relation to the charge in Count One, in violation of 18 U.S.C. § 1028A.  ROA.304.[3]

Sila pleaded not guilty to the second superseding indictment and had a three-day jury trial, with the Honorable Judge Jane J. Boyle, U.S. District Judge, presiding.  Sila was represented at trial by two attorneys, Ezekiel Tyson, Jr., and Dimitri Dube.  ROA.1105.

### B. The Jury Trial

At trial, the government proved that Sila, a Kenyan citizen, unlawfully converted a U.S. Treasury tax-refund check made out to a U.S. citizen named

---

[3] Count Three alleged a separate § 641 charge based on a different stolen Treasury check. ROA.305.  Sila was convicted of that charge at his jury trial; however, on Sila's first direct appeal, this Court found insufficient evidence supporting that conviction. *United States v. Sila*, 978 F.3d 264, 270-71 (5th Cir. 2020).

Cynthia Short and then brought it from Kenya to the United States in May 2016 – ultimately traveling from Kansas to Dallas, Texas, on August 9, 2016, in order to sell it to Amjad Qaqish, an undercover IRS agent. Agent Qaqish, the prosecution's key witness at trial, testified that Lydia Breaux, who brokered the sale of the check from Sila to Qaqish, told Qaqish in 2016 that Sila had "traveled from Kenya to the United States and currently ha[d] a large check in hand . . . ." ROA.1250. Breaux also told Qaqish that Sila would be flying from Kansas to Dallas on August 9, 2016, in order to meet with Qaqish and Breaux. On August 9, 2016, Breaux picked up Sila at the airport in Dallas and drove him to the restaurant in Dallas for the meeting. ROA.1291-92. At the restaurant, Sila sold the Treasury check to Qasish for $48,000 in cash. ROA.1268-69.

Agent Qaqish did not arrest Sila in Dallas immediately after he sold the Treasury check to Qaqish on August 9, 2016. Instead, Sila later was arrested in Los Angeles, California, on September 11, 2016, as he was attempting to board a flight back home to Kenya. ROA.1527.

There was absolutely no proof – not even a scintilla – that Sila converted the Treasury check for the first time in the Northern District of Texas. Indeed, as counsel for the government repeatedly has contended, the only reasonable inference from the evidence at trial is that Sila acquired the check for the first time *outside* the Northern District of Texas – in Kenya (or at least in some place outside

of the Northern District).  In their closing arguments at trial, the prosecutors *three times* told the jury that Sila brought the check from Kenya.  ROA.1603 ("We were able to show that . . . that check was sent to Kenya.  And where did Mr. Sila come from to come to the United States with that check?  It was Kenya."); ROA.1629-30 (telling the jury that Sila "had brought [the check] from Africa" and later that "[t]he check came from Africa, I submit to you, with this defendant in May of 2016").  Counsel for the government made the same point on Sila's first direct appeal.  *See* Appellee's Brief, *United States v. Sila*, 5th Cir. No. 17-11212, 2020 WL 882417, at *18 (5th Cir., filed Feb. 21, 2020) ("[A]lthough the record is not clear about exactly how, when, or where Sila acquired the refund check – *the reasonable inference is that Sila obtained it in Kenya*.") (emphasis added).

In the district court's jury charge, the court instructed jurors that, to convict Sila of the charge in Count One, the jury had to find that "the defendant stole or knowingly converted" the Cynthia Short check and further told jurors that:

> To 'steal' or 'knowingly convert' means to wrongfully take money, property, or thing of value belonging to another with intent to deprive the owner of its use or benefit either temporarily or permanently.  Any appreciable change of the location of the property with the intent to deprive constitutes a stealing whether or not there is an actual removal of it from the owner's premises.

ROA.1659-50.

In closing arguments, the lead prosecutor argued to jurors:

> [Defense] [c]ounsel asked, "When did the theft occur?"  Well, the
> indictment alleges August the 9th [in Dallas].  That's the day that
> [Sila] was in possession of it.  He had brought it from Africa, he had
> the intent to sell it and convert it into cash.  *That's stealing.  That's
> conversion.*

ROA.1629 (emphasis added).  That is, although the prosecution offered evidence

that Sila *sold* the check to the undercover agent in Dallas, the actual evidentiary

basis of the charge in Count One and Sila's corresponding conviction – based on

the second superseding indictment, jury charge, and prosecutor's closing argument

– was Sila's unlawful *possession* of the check in Dallas with the intent to deprive

the U.S. Treasury of the tax-refund money.[4]

The jury convicted Sila of the charges in the third superseding indictment,

ROA.620, and the district court sentenced him to 97 months in federal prison

followed by a one-year term of supervised release.  ROA.828.

---

[44] The first paragraph of § 641 includes, in addition to stealing, conversion, and purloining, the act of *selling* government property without authorization. 18 U.S.C. § 641 ("Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, *or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof*, or any property made or being made under contract for the United States or any department or agency thereof . . . .") (emphasis added).  Because neither the second superseding indictment nor the jury instructions alleged that Sila unlawfully *sold* the Cynthia Short check, such a theory of Sila's guilt is irrelevant in this case.  In any event, even if the second superseding indictment and jury instructions had permitted jurors to find Sila guilty for *selling* the check, it would not matter because this Court has held that all of the different ways of committing the offense set forth in the first paragraph of § 641 (including theft, conversion, purloining, and selling) are simply alternate "means" of committing the single offense set forth in the first paragraph. *See United States v. Coffman*, 969 F.3d 186, 192 (5th Cir. 2020).

### C. Sila's Two Direct Appeals

On Sila's first direct appeal, his appellate counsel argued that the district court had erred by refusing to give a "unanimity of theory" jury instruction – that would have told jurors that they could convict Sila of the § 641 charge in Count One only if they unanimously found that Sila had converted the Treasury check in the Northern District of Texas (as opposed to some jurors finding that he initially converted the check in Kenya and other jurors finding that he later converted the check in Dallas). *See* Jeffrey Ndunji Sila's Opening Brief, No. 17-11212, 2019 WL 5867524, at *11-*28 (5th Cir., filed Sept. 6, 2019).

Significantly, Sila's counsel on his first appeal did *not* argue that there was insufficient evidence of venue in the Northern District of Texas or that a prosecution in the Northern District of Texas was otherwise improper because the conversion offense charged in the second superseding indictment previously was committed by Sila outside of the Northern District of Texas. Instead, counsel argued that there was a "risk" that, without the unanimity instruction, the jury could have convicted Sila without unanimously agreeing that venue existed in the Northern District of Texas. *Id.* at *27-*28. In her reply brief, Sila's counsel explicitly stated that Sila *could be* properly prosecuted in the Northern District of Texas for violating § 641 in Kenya. *See* Jeffrey Ndungi Sila's Reply Brief, No. 17-11212, 2020 WL 1958336, at *2-*3 (filed Apr. 7, 2020) ("The Government

contends that the indictment alleged that the offense [Count One] occurred in the Dallas Division of the Northern District of Texas and, for venue purposes, it could only have prosecuted Mr. Sila in Dallas for an act he committed there. . . .[5]  For this reason, too, the Government argues that there was no risk that the jury convicted Mr. Sila based on any conduct other than his sale of the check [in Dallas]. . . .  *[However,] Mr. Sila could be charged in Dallas for conduct in Kenya if the charge was brought within the five-year statute of limitations.*") (emphasis added).[6]

In its brief filed on appeal, the government stated that, based on its evidence at trial, "the reasonable inference is that Sila [initially] obtained [the Treasury check] in Kenya."  Appellee's Brief, *United States v. Sila*, 5th Cir. No. 17-11212, 2020 WL 882417, at *18 (filed Feb. 21, 2020).  The government nevertheless disputed Sila's appellate counsel's claim of jury instruction error by contending

_____

[5] The reply brief referred to this portion of the government's brief:

> Because only one act occurred in the Dallas Division of the Northern District of Texas, that act is the only basis on which the government could have charged Sila and the only basis on which the jury could have convicted Sila. (*See* Fed. R. Crim. P. 18 ("the government must prosecute an offense in a district where the offense was committed"). . . .

Appellee's Brief, *United States v. Sila*, 5th Cir. No. 17-11212, 2020 WL 882417, at *18 (filed Feb. 21, 2020).

[6] Sila's former counsel was correct in stating that a § 641 violation occurring abroad can be prosecuted in a United States court.  *United States v. Ayesh*, 702 F.3d 162, 166-67 (4th Cir. 2012); *United States v. Cotten*, 471 F.2d 744, 750 (9th Cir. 1973).  However, as discussed below, counsel was incorrect that an extraterritorial application of § 641 could properly be prosecuted in the Northern District of Texas (as opposed to the Central District of California).

that there was no need for a unanimity instruction because "the indictment and the trial evidence both show that government pursued a single theory underlying Count 1" – namely, that Sila converted the Treasury check *in Dallas* (as opposed to Kenya). *See id.* at \*12-\*20. The government did not contend that it lacked the ability to prosecute Sila in Dallas for violating § 641 in Kenya earlier in 2016; instead, the government merely argued that it solely had prosecuted Sila at trial for unlawfully possessing the check with the intent to covert it *after* he arrived in Dallas in August 2016. *See id.*[7] Therefore, the government concluded, "there [was] no risk that the jury convicted Sila" for his conduct in Kenya. *Id.* at \*19.

In its opinion, this Court rejected Sila's appellate counsel's claim of a jury instruction error for the reasons set forth in the government's brief:

> Sila asserts that his right to a unanimous jury verdict was violated by the district court's failure to give a "unanimity of theory" instruction to the jury on Count I (the Short tax refund). The district court's instruction did not address . . . unanimity with respect to the location of the crime . . . .
>
> . . . Sila first argues that "[m]isappropriating the check in Kenya would constitute one offense; converting the check to cash through a sale in Dallas would constitute another." . . . The Government does not dispute that Sila's conduct in Dallas and his conduct in Kenya could have theoretically constituted two separate violations of § 641. Rather, the Government maintains that it sought to convict Sila on Count I based only on his conduct in Dallas. Therefore, the

---

[7] *See also United States v. Sila*, 978 F.3d 264, 268 (5th Cir. 2020) ("The Government does not dispute that Sila's conduct in Dallas and his conduct in Kenya could have theoretically constituted two separate violations of § 641.").

Government argues, the district court did not err in failing to give a unanimity of theory instruction as to the location of the crime.

Sila is correct that, *if* the Government had alleged he violated § 641 in Kenya and/or in Dallas, then a unanimity of theory instruction . . . would have been required. But the United States did not allege two offenses in two locations, or even that one offense occurred across two locations. . . .

*United States v. Sila*, 978 F.3d 264, 268-70 (5th Cir. 2020).

This Court did reverse Sila's conviction on the distinct § 641 charge (based on an alleged conversion of a different Treasury check in 2012) in Count Three and then remanded for resentencing on Counts One and Two (as removing the check in Count Three affected Sila's sentencing guideline range). *Id.* at 271. On remand, the district court imposed a new prison sentence of 87 months. ROA.905. After Sila filed a second direct appeal – which unsuccessfully attempted to make a different challenge to his convictions from the challenge raised on his initial appeal – this Court again affirmed his convictions of the charges in Counts One and Two. *United States v. Sila*, No. 21-10347, 2022 WL 327014 (Feb. 3, 2022), *cert. denied*, 142 S. Ct. 2793 (June 6, 2022).

### D. Sila's Section 2255 Proceedings in the District Court

Thereafter, Sila filed a timely *pro se* motion for post-conviction relief under 28 U.S.C. § 2255 that alleged, among other claims, that his trial counsel had provided ineffective assistance by failing to challenge the government's ability to

prosecute him for stealing or converting the Cynthia Short Treasury check in the Northern District of Texas. ROA.33, 41-45, 76-79, 106-19. Sila contended that, because the government's own evidence proved that he previously had committed the § 641 offense charged in Count One outside of the Northern District of Texas, his trial counsel should have either moved to dismiss for lack of venue or moved for a judgment of acquittal concerning Counts One and Two.[8] Sila specifically argued that, because the illegal acts listed in the first paragraph of § 641 (including stealing or converting government property)[9] are not "continuing offenses," his conversion of the Cynthia Short Treasury check *before* being present in the Northern District of Texas necessarily meant that he could not be prosecuted in the

---

[8] Sila contended that, if there was insufficient evidence of venue concerning Count One, then the district court also should have dismissed Count Two (which was predicated on the alleged offense charged in Count One). ROA.44, 116.

[9] Section 641 provides:

> [1] Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or
>
> [2] Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—
>
> Shall be fined under this title or imprisoned not more than ten years, or both; but if the value of such property in the aggregate, combining amounts from all the counts for which the defendant is convicted in a single case, does not exceed the sum of $1,000, he shall be fined under this title or imprisoned not more than one year, or both.

18 U.S.C. § 641 (bracketed numbers added).

Northern District of Texas based on his purported commission of the same

conversion offense in Dallas. ROA.43 (citing *United States v. Reagan*, 596 F.3d

251, 254 (5th Cir. 2010));[10] *see also* ROA.76-78, 113-14. Sila also pointed out

that, because he was first arrested in Los Angeles (rather than in Dallas), venue for

a prosecution of him for converting the Cythia Short check in Kenya existed in the

Central District of California under 18 U.S.C. § 3238.[11] ROA.43, 79, 112.

Alternatively, Sila contended that, even if the prosecution's evidence did not prove

that Sila converted the check in Kenya, it at least proved that he previously

converted it in another federal district (the District of Kansas, from which Sila

traveled to Dallas with the check on August 9, 2016) *before* he ever entered into

the Northern District of Texas. ROA.137. In such a case, he contended, it also

---

[10] In *Reagan*, this Court held that:

> Section 641 penalizes "[w]hoever embezzles, steals, purloins, or knowingly converts to his use or the use of another . . . any record, voucher, money, or thing of value of the United States." 18 U.S.C. § 641. No case has been reported discussing the "allowable unit of prosecution" under § 641. Courts interpreting similarly-worded statutes, however, have concluded that each distinct taking of funds constitutes a separate violation under the statute. . . . we hold that the "allowable unit of prosecution" under § 641 is each individual transaction in which government money is received . . . ."

*Reagan*, 596 F.3d at 253-554; *cf. Milanovich v. United States*, 365 U.S. 551, 553-54 (1961) (holding that a defendant could not be convicted under § 641 in the same prosecution of both stealing specific property and, 17 days later, concealing that same stolen property).

[11] That venue statute, which governs prosecutions based on extraterritorial application of federal statutes, provides: "The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought . . . ." 18 U.S.C. § 3238.

would be improper to prosecute him in the Northern District of Texas because conversion in violation is § 641 is not a continuing offense that "travels" from one district to another.  ROA.137.

In response to this claim, the government contended that Sila's ineffective-assistance claim was foreclosed by this Court's decision on Sila's first direct appeal.  ROA.68-69, 123.  In reply, Sila disagreed, contending that (1) the venue and unit-of-prosecution arguments made in Sila's § 2255 motion were not made in his former counsel's appellate briefs and also were not addressed in this Court's decision on the first direct appeal; and (2) "only 'those matters that were fully briefed to the appellate court and were necessary predicates to the ability to address the issue or issues specifically discussed [by the court] are deemed to have been decided tacitly or implicitly, and their disposition is law of the case.'"  ROA.140 (quoting *In re Felt*, 255 F.3d 220, 225 (5th Cir. 2001)).

Despite Sila's citation of *Felt* – which the district court did not mention in its order denying Sila's motion – the district court accepted the government's argument and rejected Sila's ineffective-assistance claim based on this Court's decision on Sila's first direct appeal:

> . . . [Sila] contends that his trial counsel . . . rendered ineffective assistance because they failed to properly challenge venue on Count One, and by relation Count Two, which was contingent on the conviction for Count One. . . .  According to [Sila], the portion of § 641 under which he was charged could only have been violated a

single time as to the subject treasury check – when it was initially obtained [by Sila] in Kenya, outside this judicial district. . . .

Here, even if the court assumes, without deciding, that [Sila]'s trial counsel . . . were deficient for not challenging venue . . . , [Sila] . . . has not shown resulting prejudice under *Strickland [v. Washington*, 466 U.S. 668 (1984)]. In [Sila]'s first appeal, the Fifth Circuit acknowledged the absence of a dispute that [Sila]'s "conduct in Dallas and his conduct in Kenya could have theoretically constituted two *separate* violations of § 641." *United States v. Sila*, 978 F.3d 264, 269 (5th Cir. 2020) (emphasis added). In other words, that the criminal conduct which occurred earlier in time in Kenya may have, in theory, constituted a violation of § 641 did not foreclose an independent violation of § 641 based on [Sila]'s separate transaction of converting the check to cash by selling it within this judicial district. *See generally id*. at 268-69. The Fifth Circuit further recognized that the Government "did not allege two offenses in two locations, or even that one offense occurred across two locations," i.e., a continuous offense. *Id.* at 269. Rather, the sole criminal conduct with which [Sila] was properly charged and convicted was the transaction of selling the treasury check in this judicial district. *See id*. at 268-70.

On this record, including the factual and legal findings of the Fifth Circuit on appeal, [Sila] fails to show a reasonable probability that, but for the alleged deficiencies of his trial and both appellate counsel in challenging venue, the result of his trial would have been different, or he would have prevailed on his first or second appeals as to Count One and Count Two. *See Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (holding that prejudice under *Strickland* requires a "'substantial,' not just 'conceivable,' likelihood of a different result.") (citing *Harrington v. Richter*, 562 U.S. 86, 112 (2011)); *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) ("the mere possibility of a different outcome is not sufficient to prevail on the prejudice prong."). Because [Sila] has not satisfied his burden under the second prong of *Strickland*, he is not entitled to § 2255 relief. His claim[] of ineffective assistance of trial . . . counsel based on his challenges to venue are therefore denied.

ROA.163-64.

## SUMMARY OF THE ARGUMENT

Sila clearly is entitled to a COA on his claim that his trial counsel provided ineffective assistance by failing to challenge the prosecution of Sila for theft or conversion of the Cynthia Short Treasury check under 18 U.S.C. § 641 in the Northern District of Texas.  The prosecution both offered evidence and argued at trial (and also later stated on direct appeal) that Sila initially had converted the Cynthia Short Treasury check *in Kenya* and then traveled to the United States with that same check, eventually ending up in Dallas, where he allegedly converted it. The offense of stealing or converting government property under § 641 is not a "continuing offense" and, therefore, the offense was fully completed when Sila initially took unlawful possession of the check in Kenya with intent to deprive the U.S. Treasury of it.  Because the "allowable unit of prosecution"[12] for a violation of stealing or converting government property under § 641 is when that property is *first* converted by the defendant, the government only could have prosecuted Sila for his conversion of the Treasury check *in Kenya* (and not also prosecute him for his purported conversion of the same check *in the Northern District of Texas*). Although § 641 may be applied extraterritorially – meaning Sila could have been prosecuted in an appropriate venue in the United States for conversion of the check in Kenya – the proper venue for such a prosecution of Sila would have been in the

---

[12] *Reagan*, 596 F.3d at 254.

Central District of California, where Sila was first arrested (in Los Angeles, as he was attempted to board a flight home to Kenya). *See* 18 U.S.C. § 3238. In any event, the second superseding indictment did not charge Sila with converting the check in Kenya; it charged him with converting it in Dallas.

Therefore, Sila's trial counsel performed deficiently by failing to challenge Sila's prosecution for the offenses charged in Counts One and Two in the Northern District of Texas. That deficient performance clearly prejudiced Sila because there is a reasonable probability that such a challenge would have resulted in the dismissal of the charges in Counts One and Two or an acquittal on those charges (or at least Sila would have prevailed on direct appeal if his trial counsel had preserved the challenge for appeal).

Contrary to the district court's mistaken belief, this Court's decision on Sila's first direct appeal does not foreclose Sila's challenge to his convictions on the ground that his trial counsel provided ineffective assistance. This Court's decision did *not rule* on the related venue, unit-of-prosecution, and continuing-offense issues, explicitly or implicitly, and instead simply was based on the parties' erroneous joint assumption – what the district court deemed "the absence of a dispute" – that Sila could have been prosecuted *both* for initially converting the check in Kenya *and* for later converting the same check in Dallas. An appellate court's ruling based on the parties' "absence of a dispute" about an antecedent

legal issue is not precedent on that issue when the parties did not brief (and the appellate court did not actually decide) that antecedent issue.

## **ARGUMENT**

### **Legal Standard Governing a Certificate of Appealability**

"The standard for granting a certificate of appealability [COA] is low." *Frost v. Gilbert*, 835 F.3d 883, 888 (9th Cir. 2016); *see also Burnham v. Evangelidis*, 411 F.Supp.3d 126, 129 (D. Mass. 2019) (describing the COA standard as "a low bar" for appellants); *Morales v. United States*, 25 F.Supp.2d 246, 256 (S.D.N.Y. 1998) (describing the COA standard as "low" for appellants).

To obtain a COA, an appellant merely must make a substantial showing of the denial of a federal constitutional right. *Buck v. Davis*, 580 U.S. 100, 114 (2017). A "substantial showing" means that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner than the district court; or that the issues are adequate to deserve encouragement to proceed further. *Drinkard v. Johnson*, 97 F.3d 751, 755-56 (5th Cir. 1996), *overruled on other grounds by Lindh v. Murphy*, 521U.S. 320 (1997). "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Miller-El v. Cockrell*, 537 U.S. 332, 342 (2003). Thus, the appellant need not show that his appeal will succeed on the merits. Indeed, "a court . . . should not decline the application for a COA merely because it believes the applicant will

not demonstrate an entitlement to relief." *Miller-El*, 537 U.S. at 337. The applicable standard does "not require [the] petitioner to prove, before the issuance of a COA, that some jurists would grant relief. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id.* at 338.

Finally, in deciding whether to issue a COA, a federal court should not give full consideration to the factual or legal bases urged in support of the appellant's claims. To the contrary, an appellate court merely should engage in an "overview" of a claim and make a "general assessment" of its merit under the generous standard discussed above. *Miller-El*, 537 U.S. at 336. During such a "general assessment," "[a]ny doubt regarding whether to grant a certificate of appealability is resolved in favor of the petitioner . . . ." *Russo v. Johnson*, 129 F.Supp.2d 1012, 1024 (S.D. Tex. 2001) (Crone, J.); *see also Lambright v. Stewart*, 220 F.3d 1022, 1025 (9th Cir. 2000) ("We will resolve any doubt about whether the petitioner has met the [COA] standard in his favor.") (citing *Buxton v. Collins*, 925 F.2d 816, 819 (5th Cir.1991) ("[W]e have warned that any doubts whether CPC [the COA's statutory predecessor] should be issued are to be resolved in favor of the petitioner.") (citation omitted)); *Jones v. Warden*, 402 F.2d 776, 776 (5th Cir.

1968) (noting "the district court correctly resolved its doubts in favor of the petitioner" in issuing a CPC).

As explained below, Sila clearly satisfies the "low" COA standard and thus is entitled to a plenary appeal on his meritorious ineffective-assistance claim.

### Sila's Trial Counsel Provided Ineffective Assistance of Counsel by Failing to Challenge Sila's Prosecution for the Charges in Counts One and Two in the Northern District of Texas.

As discussed below Sila's arguments are based on three related legal propositions – (1) the first paragraph of 18 U.S.C. § 641 contains alternate "means" of committing *a single offense* (rather than alternate offenses); (2) that single offense is not a "continuing offense," at least when it involved stealing or conversion of a single U.S. Treasury check (as Sila's offense did); and (3) § 641 allows, as a "unit of prosecution," a single prosecution for a single act of theft or conversion of government property.  As a result of these propositions and the prosecution's own evidence in this case, because Sila's conversion offense began and ended in Kenya, the only district in which he could have been properly prosecuted was the Central District of California in view of his arrest in Los Angeles (assuming he had been charged with conversion in Kenya – with which he never has been charged).  *See* 18 U.S.C. § 3238.[13]

---

[13] That statute provides: "The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which

***

The key issue underlying Sila's ineffective-assistance claim is whether his conversion of the Cynthia Short Treasury check could have been initially committed outside of the Northern District of Texas *and* later *re-committed* in the Northern District of Texas. The answer to that question lies in the fact that the various "means" of commission of the offense set forth in the first paragraph of § 641 – including stealing and converting[14] – are not "continuing" in nature, at least when the offense involved a single U.S. Treasury check. *United States v. Green*, 897 F.3d 443, 448 (2d Cir. 2018); *United States v. Samson*, 433 F. Supp.3d 1046, 1052-53 (S.D. Tex. 2020) (Lake, J.);[15] *United States v. Reese*, 254 F.Supp.3d 1045,

---

the offender, or any one of two or more joint offenders, is arrested or is first brought . . . ." 18 U.S.C. § 3238.

[14] Significantly, once a single "means" of committing a violation of the offense in the first paragraph of § 641 occurs concerning a specific item of federal property or specific federal funds (including a Treasury tax-refund check), the "entire" offense set forth in the first paragraph occurs. *See United States v. Coffman*, 969 F.3d 186, 192 (5th Cir. 2020); *Reagan*, 596 F.3d at 253-554.

[15] In *Samson*, Judge Lake stated that:

> [E]mbezzlement, stealing, and knowing conversion under § 641 are not by their nature continuing offenses. A violation under § 641(a) is complete as soon as the offender unlawfully takes or misappropriates money or a thing of value of the United States. While the statute defines a broad range of conduct, the conduct does not inherently continue.

*Samson*, 433 F. Supp.3d at 1053.

By contrast, the second paragraph of § 641 – "Whoever receives, *conceals, or retains* the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted" – may be a "continuing" offense. *United States v. Beard*, 713 F. Supp. 285, 290

1049 (D. Neb. 2017); *United States v. Henrikson*, 191 F.Supp.3d 999, 1001 (D. S.D. 2016); *United States v. Powell*, 99 F.Supp.3d 262, 264-66 (D. R.I. 2015); *see also United States v. McGoff*, 831 F.2d 1071, 1078 (D.C. Cir. 1987) ("As first-year law students (presumably) learn, a criminal offense is typically completed as soon as each element of the crime has occurred.  For example, a larceny is completed as soon as there has been an actual taking of the property of another without consent, with the intent permanently to deprive the owner of its use.  The offense does not 'continue' over time.  The crime is complete when the act is complete."); *United States v. Tackett*, Criminal No. 11-15-ART, 2011 WL 4005347, at *4 (E.D. Ky. Sept. 8, 2011) (Thapar, J.) ("Courts do not traditionally consider theft a continuing offense."); *cf. United States v. Askia*, 893 F.3d 1110 (8th Cir. 2018) (embezzlement in violation of 18 U.S.C. § 666 is not a continuing offense); *United States v. Yashar*, 166 F.3d 873 (7th Cir. 1999) (same).[16]  In addition, any doubt about whether a penal statute creates a "continuing offense" must be resolved in favor of

---

n.3 (S.D. Ind. 1989).  Significantly, however, Sila was ***not*** charged with committing an offense under paragraph two of § 641 in the Northern District of Texas.

[16] In *United States v. Smith*, 373 F.3d 561 (4th Cir. 2004), the Fourth Circuit, in a 2-1 decision, held that embezzlement (a form of conversion) in violation of 18 U.S.C. § 641 is a continuous offense, "[a]t least in those cases where the defendant created a recurring, automatic scheme of embezzlement" (such as receiving regular monthly government checks over a period of time). *Id.* at 567.  Even assuming *arguendo* that *Smith* were consistent with Fifth Circuit precedent – which it is not, *see Samson*, 433 F. Supp.3d at 1052-53 – *Smith* is inapposite when applied to Sila's case because, unlike the defendant in *Smith*, Sila was not charged in Count One with having engaged in a "recurring" scheme of conversion of multiple Treasury checks.  Instead, Count One charged him with converting a single Treasury check (the Cynthia Short check).

a criminal defendant under the rule of lenity. *United States v. Kramer*, 73 F.3d 1067, 1072-73 n.11 (11th Cir. 1996).

When Sila in Kenya initially took possession if the check with the intent to deprive the U.S. Treasury of it, the paragraph-one § 641 offense was completed. Sila thereafter could not "recommit" that same offense concerning the same check in Dallas (and thus could not be properly prosecuted for the purported Dallas offense in the Northern District of Texas). *See Reagan*, 596 F.3d at 253-554; *cf. Milanovich v. United States*, 365 U.S. 551, 553-54 (1961) (holding that a defendant could not be convicted under § 641 in the same prosecution of both stealing specific property and, 17 days later, concealing that same stolen property).

Therefore, despite the second superseding indictment's allegation that the offense occurred "in the Dallas Division of the Northern District of Texas," the prosecution's own evidence at trial – and its explicit statements made at trial and on Sila's first appeal[17] – proved otherwise. The sole proper venue for prosecution of Sila for violating the first paragraph of § 641 (in Kenya rather than Dallas) would be in the Central District of California, where he was arrested.

---

[17] Appellee's Brief, *United States v. Sila*, 5th Cir. No. 17-11212, 2020 WL 882417, at *18 (5th Cir., filed Feb. 21, 2020) ("[A]lthough the record is not clear about exactly how, when, or where Sila acquired the refund check – *the reasonable inference is that Sila obtained it in Kenya*.") (emphasis added); *id.*, at *19 ("[T]he government did not focus its case [at trial] on how the refund check came into Sila's possession – *other than to recognize that it probably occurred outside of the Northern District of Texas*.") (emphasis added).

As noted above, in the § 2255 proceedings in the district court, the government argued that, despite its clear position taken at trial, the evidence did not prove that Sila actually converted the Treasury check in Kenya. ROA.129. As Sila argued in response in the court below (ROA.137), assuming *arguendo* that the prosecution's evidence at trial did not prove that Sila first obtained the check in Kenya, then venue lay in the District of Kansas (where Sila clearly possessed the Cynthia Short check, with the intent to sell it to the undercover agent, before flying to Dallas). Because 18 U.S.C. § 641 (first paragraph) is not a "continuing offense," and because all elements of the conversion offense had been completed in the District of Kansas (assuming *arguendo* that Sila first took possession of the check in Kansas rather than in Kenya), venue would solely exist in the District of Kansas. *See United States v. Salinas*, 373 F.3d 161, 165 (1st Cir. 2004) ("[T]he government cannot take refuge in the continuing offense venue provision [in 18 U.S.C. § 3237(a)[18]] without answering the logically antecedent question of whether [the charged offense] can be considered a continuing offense . . . ."); *see also United States v. Lukashov*, 694 F.3d 1107, 1120-21 (9th Cir. 2012) (holding that,

---

[18] That statute provides in pertinent part:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

18 U.S.C. § 3237(a).

under § 3237(a), "venue for a continuing offense is proper if an 'essential conduct element' of the offense begins in, continues into, or is completed in the charging district") (citing *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999)).

\*\*\*

For these reasons, Sila's trial counsel provided ineffective assistance by failing to challenge Sila's prosecution for conversion or theft of the Cynthia Short Treasury check in the Northern District of Texas. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court addressed the constitutional standard to determine whether counsel rendered reasonably effective assistance. A defendant first must show that counsel's performance was "deficient" under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. The defendant also must show that counsel's deficient performance "prejudiced" the defense – "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* 466 at 694. A reasonable probability is *less* than a showing by a preponderance of the evidence. *Id.* at 694; *see also United States v. Dominguez Benitez*, 542 U.S. 74, 82 n.9 (2004) (same).

As noted, the district court did not address the deficient performance prong of the *Strickland* standard (other than to *assume* that Sila's trial counsel acted deficiently). For the reasons discussed above, trial counsel clearly were deficient by failing to challenge the prosecution of Sila in the Northern District of Texas.

They should have moved to dismiss the charges in Counts One and Two for lack of venue and, if that failed, moved for a judgment of acquittal on the ground that the § 641 offense charged in the second superseding indictment could not have been "recommitted" in the Northern District of Texas after it initially was committed outside of the Northern District of Texas.

A key consideration in assessing alleged deficient performance is whether counsel acted "strategically." *Strickland*, 466 U.S. at 690-91. There was no conceivable "strategic" reason for Sila's trial counsel's failure to challenge Sila's prosecution in the Northern District of Texas when the legal basis for such a challenge was clearly meritorious. *See, e.g., United States v. Haisten*, 50 F.4th 368, 372 (3d Cir. 2022) ("While a wide berth is given to the strategic decisions of counsel and their professional judgment, the record here is devoid of any explanation for trial counsel's failure to object to improper venue on Counts 14 and 15.").[19] There was absolutely no downside to making such a challenge and only a great potential benefit – dismissal of the charges or a judgment for acquittal – for Sila. *See Henry v. Scully*, 78 F.3d 51, 53 (2d Cir. 1996) ("[C]ounsel should have made such a request because there was no downside to doing so and there was a potential benefit to be gained."). It was not as if Sila had any other viable defense

---

[19] In the district court proceedings, the government offered no evidence of any "strategic" reason for Sila's trial counsel's failure to challenge the prosecution of Sila in the Northern District of Texas.

to the charges in Counts One and Two – assuming *arguendo* that what Sila did in Dallas with the Treasury check was a legitimate basis for a § 641 prosecution in the Northern District of Texas – as counsel for the government has pointed out. Appellee's Brief, *United States v. Sila*, 5th Cir. No. 17-11212, 2020 WL 882417, at *25-26 (5th Cir., filed Feb. 21, 2020) ("[T]he trial evidence overwhelmingly demonstrated that Sila was guilty of theft of public funds related to the Cynthia Short tax refund check. Indeed, the jury was presented with video and audio recordings of the August 9, 2016 transaction, where Sila is seen selling the Cynthia Short tax refund check for nearly $50,000.").

In addition, if Sila's trial counsel successfully had challenged Count One, Sila also would have been entitled to a dismissal of (or acquittal on) Count Two. Count Two, as charged in the second superseding indictment, was entirely dependent on Count One.    ROA.304 (charging respondent with unlawfully transferring a means of identification of Cynthia Short "during and in relation to the offense of Theft of Public Funds in violation of Title 18, United States Code, Section 641, *as alleged in Count One of this Superseding Indictment*") (emphasis added).    *See United States v. Johnson*, 19 F.4th 248, 255 n.5 (3d Cir. 2021) ("Conviction for aggravated identity theft depends on commission of an enumerated felony, so the reversal of a conviction for the predicate felony requires reversal of the aggravated identity theft conviction.") (citing *United States v.*

*Camick*, 796 F.3d 1206, 1219 (10th Cir. 2015)); *United States v. Guido*, 554 Fed. App'x 631, 632-33 (9th Cir. 2014) ("Guido's conviction under § 1028A was predicated upon his conviction under § 641.  *See* 18 U.S.C. § 1028A(a)(1). Because we reverse Guido's conviction for the predicate offense, theft of government property under § 641, we also reverse his conviction for aggravated identity theft under § 1028A.").

Trial counsel's deficient performance prejudiced Sila because there is a reasonable probability that, if the challenge to Counts One and Two had been made, the district court would have dismissed both Counts One and Two or the court or jury would have acquitted Sila (assuming trial counsel had made the proper arguments).  *See, e.g.*, *Cornell v. Kirkpatrick*, 665 F.3d 369, 382 (2d Cir. 2011) ("If Cornell's counsel had objected to venue, 'there is a reasonable probability' that the charges stemming from Victim # 2's alleged rape would have been dismissed. . . .   Therefore, Cornell satisfies the prejudice prong of the *Strickland* two-part test.").   Finally, if the district court or jury erroneously believed that the prosecution of Sila in the Northern District of Texas was proper, there is a reasonable probability that this Court would have reversed Sila's convictions for Counts One and Two on direct appeal if the issue had been raised.

Accordingly, this Court should reverse the district court's judgment and remand for entry of an order vacating Sila's convictions and dismissing the

superseding indictment.  At the very least, Sila is entitled to an evidentiary hearing on his ineffective-assistance claim, which he requested in the court below. ROA.45.

### **The District Court Mistakenly Believed that this Court's Decision on Sila's First Direct Appeal Forecloses His Ineffective-Assistance Claim.**

As noted above, the district court assumed *arguendo* that Sila's trial counsel performed deficiently but held that this Court's decision on Sila's first direct appeal foreclosed his ability to show "prejudice" under *Strickland v. Washington*. ROA.163-64 ("In [Sila]'s first appeal, the Fifth Circuit acknowledged the absence of a dispute that [Sila]'s 'conduct in Dallas and his conduct in Kenya could have theoretically constituted two *separate* violations of § 641.' . . .  In other words, that the criminal conduct which occurred earlier in time in Kenya may have, in theory, constituted a violation of § 641 did not foreclose an independent violation of § 641 based on [Sila]'s separate transaction of converting the check to cash by selling it within this judicial district.") (quoting *United States v. Sila*, 978 F.3d 264, 268-69 (5th Cir. 2020); emphasis added by district court).

The district court erred.  This Court's discussion of the "unanimity of theory" jury instruction issue cannot reasonably be interpreted to have held that Sila could be properly prosecuted for *two different acts* under the first paragraph of 18 U.S.C. § 641 related to the same U.S. Treasury check – as opposed to being

prosecuted solely for the *first* act of conversion (which, in Sila's case, occurred in Kenya or Kansas). Only "those matters that were fully briefed to the appellate court and were necessary predicates to the ability to address the issue or issues specifically discussed [by the court] are deemed to have been decided tacitly or implicitly, and their disposition is law of the case." *In re Felt*, 255 F.3d 220, 225 (5th Cir. 2001). The issues underlying Sila's ineffective-assistance claim were not argued and "fully briefed" on direct appeal, and those issues certainly were not a "necessary predicate" to this Court's discussion of the jury instruction issue.

It is well established that, when an appellate court renders a decision based on an undisputed "antecedent proposition" of law, the court's assumption of the correctness of that legal proposition is not binding precedent in a future case when that proposition is challenged as incorrect. *United States v. Verdugo-Urquidez*, 494 U.S. 259, 272 (1990); *see also Cooper Indus. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.") (citation and internal quotation marks omitted). On Sila's first direct appeal, counsel for both parties – Sila's former counsel and the prosecutor – erroneously assumed that Sila's "conduct in Dallas and his conduct in Kenya [concerning the Cynthia Short check] could have theoretically constituted two separate violations of § 641." *United States v. Sila*,

978 F.3d 264, 269 (5th Cir. 2020).   However, because the undisputed assertion made by Sila's former counsel on direct appeal – that Sila could be prosecuted *both* for his initial conversion of the check in Kenya and later for his purported recommission of the same conversion offense in Dallas (and that venue for both offenses existed in the Northern District of Texas)[20] – merely was an "antecedent proposition" rather than a holding of this Court, this Court's decision does not foreclose a showing of *Strickland* "prejudice."

Significantly, the terms "continuing offense," "unit of prosecution," and "venue" – or citations to 18 U.S.C. §§ 3237(a) or 3238 – appear nowhere in this Court's discussion of the "unanimity of theory" issue on Sila's first appeal.   As discussed *supra*, that is because Sila's appellate counsel's briefs did not frame the issue as a challenge to Sila's prosecution in the Northern District of Texas.   Indeed, in support of the jury-instruction issue raised on appeal, appellate counsel made two explicit arguments that were entirely contrary to the meritorious challenge that could have been made at trial: (1) "Misappropriating the check in Africa with criminal intent would constitute one offense [while] converting the check to cash through a sale in Dallas would constitute another"; and (2) ". . . Mr. Sila could be charged in Dallas for conduct in Kenya if the charge was brought within the five-

---

[20] *Sila*, 978 F.3d 264, 268-69 ( "The Government does not dispute that Sila's conduct in Dallas and his conduct in Kenya could have theoretically constituted two separate violations of § 641. . . . Sila is correct that, if the Government had alleged he violated § 641 in Kenya and/or in Dallas, then a unanimity of theory instruction . . . would have been required.").

year statute of limitations." Jeffrey Ndungi Sila's Reply Brief, No. 17-11212, 2020 WL 1958336, at *2-*3, *5 (filed Apr. 7, 2020).

That is, appellate counsel mistakenly believed that two distinct § 641 conversion charges could have been properly filed against Sila based on his conduct in connection with the Cynthia Short tax-refund check – one charge for his conduct in Kenya and a second charge for his conduct in Dallas.[21] Counsel also failed to understand that Sila's arrest in Los Angeles meant that venue for a prosecution based on Sila's conduct in Kenya solely existed in the Central District of California.

Therefore, this Court's opinion on Sila's first appeal does not foreclose Sila's ineffective-assistance claim concerning the lack-of-venue defense.[22]  The

---

[21] Remarkably, appellate counsel correctly stated in her reply brief that (1) "the 'allowable unit of prosecution' under § 641 is each individual transaction" and (2) a "violation of § 641 is a discrete, not a continuing, offense." Jeffrey Ndungi Sila's Reply Brief, 2020 WL 1958336, at *6 (citing *United States v. Reagan*, 596 F.3d 251, 254 (5th Cir. 2010)).  However, she clearly failed to understand that, *as a result*, the federal government was limited to prosecuting Sila for his conduct in Kenya (where the conversion offense began and ended) or in Kansas (if there was insufficient evidence that Sila first committed the conversion offense in Kenya) and could not also prosecute him for theft or conversion of the same Treasury check based on his subsequent conduct concerning the same Treasury check in Dallas.

[22] Even assuming *arguendo* that this Court's 2020 decision is "law of the case" on the venue issue, this Court should apply a well-established exception to the law-of-the-case doctrine: the prior decision was "clearly erroneous," and it would work a "manifest injustice" to apply the law-of-the-case doctrine.  *Browning v. Navarro*, 887 F.2d 553, 556 (5th Cir.1989).  As discussed above, § 641 (first paragraph) clearly is not a "continuing offense," at least when the alleged conversion was of a single Treasury check, and the proper "unit of prosecution" under § 641 is the initial act of conversion.  Any implicit holding in this Court's 2020 opinion to the contrary – suggesting that Sila could be prosecuted for his purported conversion of the check in Dallas and that venue existed in the Northern District of Texas for Sila's conduct in Dallas – would have

district court thus erred by concluding that Sila failed to show "prejudice" under *Strickland*. The district court should have followed the Supreme Court's direction that, in assessing *Strickland* "prejudice," a court must assume that a court ruling on a motion not filed by a deficient attorney would have "reasonably, conscientiously, and impartially appl[ied]" the law. *Strickland*, 466 U.S. at 695 ("The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision."). There is at least a "reasonable probability" that a court reasonably, conscientiously, and impartially applying the law at Sila's trial would have dismissed the charges in Counts One and Two for lack of venue if Sila's trial counsel had challenged venue or entered a judgment of acquittal if the appropriate motion had been made.

Because the record clearly establishes trial counsel's ineffective assistance, this Court should reverse the district court's judgment and remand with instructions to vacate Sila's convictions and dismiss Counts One and Two. At the very least, Sila is entitled to an evidentiary hearing because the record does not conclusively foreclose his ineffective-assistance claim. *Fontaine v. United States*, 411 U.S. 213, 215 (1973) (per curiam) ("On this record, we cannot conclude with

---

been clearly erroneous. Furthermore, because Sila was convicted of non-existent offenses in Dallas (insofar as the conversion offense was previously completed in Kenya or Kansas), it would be a miscarriage of justice to allow Sila's convictions for his conduct in Dallas stand.

the assurance required by the statutory standard 'conclusively show' that under no circumstances could the petitioner establish facts warranting relief under § 2255; accordingly, we vacate the judgment of the Court of Appeals and remand to that court to the end that the petitioner be afforded a hearing on his petition in the District Court.").

## <u>CONCLUSION</u>

For the foregoing reasons, because Sila has shown that his Sixth Amendment ineffective-assistance claim clearly is debatable among reasonable jurists – indeed, it is clearly meritorious – this Court should grant a COA, afford plenary review by a three-judge panel, and reverse the judgment of the district court.

Dated:  September 5, 2024                    Respectfully submitted,

/s/ *<u>Brent Evan Newton</u>*
Brent Evan Newton
Attorney at Law
Texas Bar No. 00788115
19 Treworthy Road
Gaithersburg, MD 20878
(202) 975-9105
brentevannewton@gmail.com

**Attorney for Defendant-Appellant**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing brief has been served by the

Fifth Circuit electronic filing system on Assistant U.S. Attorney Stephen Gilstrap,

counsel for Plaintiff-Appellee, on this 5th day of September, 2024.

/s/ *Brent Evan Newton*
Brent Evan Newton

## CERTIFICATE OF COMPLIANCE

1.    This brief and the accompanying Motion for a Certificate Appealability, when considered together, comply with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because the motion and brief together contain **9,465 words**, excluding the parts of the brief and motion exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word version 14.0 in Times New Roman 14 point font.

3.    This brief and the accompanying electronic copy of this brief comply with 5TH CIR. R. 31.1 because they have been converted into Portable Document File (PDF) format.

4.    The undersigned understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in Fifth Circuits  Rule 32.2.7, may result in the Court's striking the brief and imposing sanctions against the undersigned counsel.

/s/ *Brent Evan Newton*
Brent Evan Newton